```
          IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF MARYLAND
                                    :
MIGUEL ANGEL CALDERON RECINOS
                                    :
    v.                              :  Civil Action No. DKC 15-0406
                                    :
JMZ CONSTRUCTION, LLC, et al.
                                    :
```

**MEMORANDUM OPINION**

Presently pending and ready for resolution in this case involving alleged violations of the Fair Labor Standards Act, Maryland Wage and Hour Law, and the Maryland Wage Payment and Collection Law is a motion for default judgment filed by Plaintiff Miguel Angel Calderon Recinos.  (ECF No. 11).  The court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the following reasons, the motion will be granted in part and denied in part.

I. **Background**

Unless otherwise noted, the following facts are set forth in the complaint.  (ECF No. 1).  Plaintiff Miguel Angel Calderon Recinos ("Plaintiff") worked for Defendants JMZ Construction, LLC ("JMZ Construction"), Jose Margarito Gomez, and Joap Vasquez from February 22, 2013 through October 10, 2014.  JMZ Construction is a Maryland corporation, and Mr. Gomez and Mr. Vasquez controlled the day-to-day operations of the corporation.

(ECF No. 1 ¶¶ 4-14).  Plaintiff avers that he worked for JMZ Construction for an average of eighty-four hours per week for the first seven months of his employment and then an average of sixty-four hours per week until July 1, 2014.  (ECF No. 11-1 ¶ 2).[1]  Plaintiff earned a regular hourly rate of $16.00 per hour.[2]  Plaintiff alleges Defendants never paid him wages at an overtime rate for the hours he worked above forty hours each week from February 22, 2013 through July 1, 2014.  Plaintiff declares in his sworn affidavit that Defendants owe him approximately $19,008.00.  (ECF No. 11-1 ¶ 3).

Plaintiff filed his complaint on February 11, 2015.  (ECF No. 1).  Plaintiff alleges overtime violations pursuant to the Maryland Wage and Hour Law, Md. Code Ann., Lab. & Empl. § 3–401

---

[1] Plaintiff's pending motion differs from his complaint with regard to the average number of hours he worked after the first seven months until July 1, 2014.  In the complaint, Plaintiff alleged he worked an average of sixty-six hours per week.  (ECF No. 1 ¶ 19).  In the pending motion and attached affidavit, however, Plaintiff alleges he worked an average of sixty-four hours per week.  (ECF Nos. 11, at 1; 11-1 ¶ 2).  Accordingly, the sixty-four hour figure will be used in calculating the wages owed.

[2] Here, again, the facts alleged in Plaintiff's complaint differ from those alleged in the pending motion.  In the complaint, Plaintiff alleged he earned $18.00 per hour from October 2013 through July 2014.  (ECF No. 1 ¶ 18).  In the pending motion, however, Plaintiff alleges he earned $16.00 per hour during that same period.  (ECF No. 11, at 4).  Plaintiff appears to calculate damages in both the complaint and the pending motion based on the $16.00 per hour rate.  Plaintniff's affidavit is silent on the hourly rate, but the math is based on the $16.00 per hour rate throughout.  Accordingly, the $16.00 rate will be used for the entirety of Plaintiff's employment.

*et seq.* ("MWHL") (Count I); the Fair Labor Standards Act of 1938, as amended, 29 U.S.C. § 201 *et seq.* ("FLSA") (Count II); and the Maryland Wage Payment and Collection Law, Md. Code Ann., Lab. & Empl. § 3-501 *et seq.* ("MWPCL") (Count III).

Service of process was properly effected on JMZ Construction and Mr. Gomez.  Plaintiff failed to notify the court that service was effected on Mr. Vasquez within 120 days after the filing of the complaint, and Plaintiff subsequently submitted a notice of dismissal as to Mr. Vasquez.  (ECF No. 8). The court approved the notice of dismissal of Mr. Vasquez on August 10, 2015.[3]  (ECF No. 9).  When Defendants failed to respond within the requisite time period, Plaintiff moved for entry of default (ECF No. 5), and the clerk entered default as to JMZ Construction and Mr. Gomez (ECF No. 6).  On October 23, Plaintiff filed the pending motion for default judgment and for attorney's fees and costs.  (ECF No. 11).  To date, Defendants have taken no action in this case.

**II.  Standard of Review**

Under Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the

---

[3]  JMZ Construction and Mr. Gomez (collectively, "Defendants") are the remaining defendants in this action.

party's default."  Rule 55(b)(1) provides that the clerk may enter a default judgment if the plaintiff's claim is "for a sum certain or a sum that can be made certain by computation."

"Upon [entry of] default, the well-pled allegations in a complaint as to liability are taken as true, but the allegations as to damages are not."  *S.E.C. v. Lawbaugh*, 359 F.Supp.2d 418, 422 (D.Md. 2005).  It remains, however, "for the court to determine whether these unchallenged factual allegations constitute a legitimate cause of action."  *Agora Fin., LLC v. Samler*, 725 F.Supp.2d 491, 494 (D.Md. 2010).  Federal Rule of Civil Procedure 54(c) limits the type of judgment that may be entered based on a party's default: "A default judgment must not differ in kind from, or exceed in amount, what is demanded in the pleadings."  Thus, where a complaint specifies the amount of damages sought, such as here, the plaintiff is limited to entry of a default judgment in that amount.  "[C]ourts have generally held that a default judgment cannot award additional damages . . . because the defendant could not reasonably have expected that his damages would exceed that amount."  *In re Genesys Data Technologies, Inc.*, 204 F.3d 124, 132 (4th Cir. 2000).  While the court may hold a hearing to consider evidence as to damages, it is not required to do so; it may rely instead on "detailed affidavits or documentary evidence to determine the appropriate sum."  *Adkins v. Teseo*, 180 F.Supp.2d 15, 17 (D.D.C. 2001)

(citing *United Artists Corp. v. Freeman*, 605 F.2d 854, 857 (5th Cir. 1979)).

## III. Analysis

### A. Liability

Defendants were served with the complaint but have not responded. Accordingly, all of Plaintiff's allegations as to liability are deemed admitted.

The FLSA provides that, for any hours worked in excess of forty hours per week, an employee shall "receive[] compensation for his employment . . . at a rate not less than one and one-half times the regular rate at which he is employed." 29 U.S.C. § 207. Similarly, Section 3-415 of the MWHL requires employers to pay their employees an overtime wage of at least one-and-half times their usual hourly wage for work they perform in excess of forty hours per week. Md.Code Ann., Lab. & Empl. §§ 3-415, 3-420. "The requirements of the MWHL 'mirror' those of the FLSA, and claims under both statutes therefore stand or fall together." *Orellana v. Cienna Properties, LLC*, JKB-11-2515, 2012 WL 203421, at *5 (D.Md. Jan. 23, 2012) (citing *Turner v. Human Genome Science, Inc.*, 292 F.Supp.2d 738, 744 (D.Md. 2003)). Moreover, the Court of Appeals of Maryland reiterated the reach of the MWPCL claim in *Peters v. Early Healthcare Giver, Inc.*, 439 Md. 646, 646 (2014):

> Maryland has two wage enforcement laws . . . the [M]WHL and the [M]WPCL. The [M]WHL aims to protect Maryland workers by providing a minimum wage standard. The [M]WPCL requires an employer to pay its employees regularly while employed, and in full at the termination of employment. Read together, these statutes allow employees to recover unlawfully withheld wages from their employer, and provide an employee two avenues to do so.

*See also Marshall v. Safeway*, 437 Md. 542, 561-62 (2014) (holding that the MWPCL generally provides an employee with a cause of action against an employer, not just for the failure to pay wages on time, but also for "the refusal of employers to pay wages lawfully due.").

Plaintiff alleges that he routinely worked an average of eighty-four hours per week for the first seven months of his employment and then an average of sixty-four hours per week until July 1, 2014. He avers that he was not paid time and a half for the hours worked after forty hours each week. Accepting as true the well-pled allegations, Plaintiff has established that Defendants are liable to Plaintiff under the FLSA, the MWHL, and the MWPCL.

**B. Damages**

The complaint asserts that Plaintiff is owed $19,008.00 in actual damages for overtime worked. (ECF No. 1 ¶ 20). The complaint also requests double or treble damages under the FLSA or the MWPCL, respectively. (*Id.* ¶¶ 31, 36). Although

6

Plaintiff has established liability under all three statutes, Plaintiff will recover only once for all damages resulting from Defendants' failure to pay him deserved wages. *See United States v. Rachel*, 289 F.Supp.2d 688, 697 (D.Md. 2003) ("The one wrong, one recovery rule precludes a party from double recovery for a single injury.") (citing *Kramer v. Emche*, 64 Md.App. 27 (1985)).

"In cases such as the present one in which wage and pay records, required to be kept by employers pursuant to 29 U.S.C. § 211(c), are not available, [the employee] must show the amount and extent of [his] improperly compensated work 'as a matter of just and reasonable inference.'" *Lopez v. Lawns 'R' Us*, DKC-07-2979, 2008 WL 2227353, at *3 (D.Md. May 23, 2008) (quoting *Donovan v. Bel-Loc Diner, Inc.*, 780 F.2d 1113, 1116 (4th Cir. 1985)). Moreover, an employee's statement under oath "as to his recollection of the hours he worked and the pay he received, if considered credible by the trier of fact, is sufficient to establish a prima facie case of wages owed," and if the employer does not successfully rebut the employee's statement, "[t]he Court may award damages based on Plaintiffs' testimony even though the amounts claimed are only approximated and not perfectly accurate." *Lopez*, 2008 WL 2227353, at *3.

**1. Damages Calculation**

Although Plaintiff calculates that he is entitled to $19,008.00 in unpaid overtime wages, he is actually entitled to $17,920.00.

In his sworn affidavit, Plaintiff states that he began working on February 22, 2013 and Defendants did not pay him an overtime rate from that date through July 1, 2014. (ECF No. 11-1 ¶ 1). Those dates encompass a seventy week (plus two day) time period.[4] Plaintiff further attests that he worked an average of eighty-four hours per week for the first seven months (twenty-eight weeks), and he worked an average of sixty-four hours per week from then until July 1, 2014 (forty-two weeks). (*Id.* ¶ 2). Defendants did not compensate Plaintiff at the mandated time and a half rate for overtime worked each of the seventy weeks. Plaintiff earned only his regular hourly rate of $16.00 per hour. Because Plaintiff earned his regular rate for the overtime worked, he is due overtime compensation in an amount of fifty percent his regular rate ($8.00) multiplied by the total number of overtime hours worked — forty-four hours for twenty-eight weeks (1,232 hours) and twenty-four hours for forty-two weeks (1,008 hours), totaling 2,240 hours.

---

[4] The pending motion erroneously calculates the overtime compensation owed to Plaintiff based on a seventy-two week period as opposed to the correct seventy week period. (ECF No. 11, at 5).

Accordingly, Plaintiff is entitled to $17,920.00 in overtime wages.

### 2. Enhanced Damages

Plaintiff requests the court treble the damages pursuant to MWPCL or liquidate the damages pursuant to the FLSA. Plaintiff is "entitled to recover liquidated damages under the FLSA or treble damages under the [MWPCL], but not both." *Quiroz v. Wilhelp Commercial Builders, Inc.*, No. WGC-10-2016, 2011 WL 5826677, at *3 (D.Md. Nov. 17, 2011). "Enhanced damages serve the dual purposes of compensating employees for consequential losses, such as late charges or evictions that can occur when employees who are not properly paid are unable to meet their financial obligations; and of penalizing employers who withhold wages without colorable justification." *Clancy v. Skyline Grill, LLC*, No. ELH-12-1598, 20122 WL 5409733, at *8 (D.Md. Nov. 5, 2012) (quoting *Lopez*, 2008 WL 2227353, at *4).

> [I]t has become customary in this district to award double damages under FLSA, but not treble damages under the MWPCL, when the "defendants '[do] not offer any evidence of a bona fide dispute' to make liquidated damages suffered because of underpayments.'" *Clancy*, 2012 WL 5409733, at *8 (quoting *Lopez*, 2008 WL 2227353, at *4); *see also Castillo v. D&P Prof'l Servs., Inc.*, No. DKC-14-1992, 2015 WL 4068531, at *6–7 (D.Md. July 2, 2015); *Labuda v. SEF Stainless Steel, Inc.*, No. RDB-11-1078, 2012 WL 1899417, at *3 (D.Md. May 23, 2012); *Monge v. Portofino Ristorante*, 751 F.Supp.2d 789, 800 (D.Md. 2010).

*Villatoro v. CTS & Assocs., Inc.*, No. DKC-14-1978, 2016 WL 2348003, at *3 (D.Md. May 4, 2016).

Here, Defendants have failed to appear and present any evidence of a bona fide dispute. On the other hand, Plaintiff has provided no evidence of any consequential damages suffered because of Defendants' violations. Based on the foregoing, liquidated damages (as opposed to treble damages) will be awarded here in the amount of $35,840.00.

### 3. Attorney's Fees and Costs

Plaintiff also seeks an award of reasonable costs and attorney's fees. In an action under the FLSA, "[t]he court . . . shall, in addition to any judgment awarded to the plaintiff or plaintiffs, allow a reasonable attorney's fee to be paid by the defendant, and costs of the action." 29 U.S.C. § 216(b). Although the payment of attorney's fees and costs to employees who prevail on FLSA claims is mandatory, "[t]he amount of attorney's fees . . . is within the sound discretion of the trial court." *Burnley v. Short*, 730 F.2d 136, 141 (4th Cir. 1984). The MWHL has a similar provision. Md. Code Ann., Lab. & Empl. § 3-427(d) ("If a court determines that an employee is entitled to recovery in an action under this section, the court may allow against the employer reasonable counsel fees and others costs.").

The court determines the amount of a reasonable fee by starting with the "number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). This approach is commonly known as the "lodestar" method.[5] *Grissom v. The Mills Corp.*, 549 F.3d 313, 320 (4th Cir. 2008). In assessing reasonableness, the Fourth Circuit has instructed district courts to consider certain factors, including:

> (1) the time and labor expended; (2) the novelty and difficulty of the questions raised; (3) the skill required to properly perform the legal services rendered; (4) the attorney's opportunity costs in pressing the instant litigation; (5) the customary fee for like work; (6) the attorney's expectations at the outset of the litigation; (7) the time limitations imposed by the client or circumstances; (8) the amount in controversy and the results obtained; (9) the experience, reputation and ability of the attorney; (10) the undesirability of the case within the legal community in which the suit arose; (11) the nature and length of the professional relationship between attorney and client; and (12) attorney's fees awards in similar cases.

*Robinson v. Equifax Info. Servs.*, 560 F.3d 235, 243-244 (4th Cir. 2009) (quoting *Barber v. Kimbrell's Inc*, 577 F.2d 216, 226 n.28 (4th Cir. 1978)). "[T]he burden rests with the fee applicant to establish the reasonableness of a requested rate." *Id.* at 244

---

[5] Maryland courts also use the "lodestar" method when determining attorney's fees under fee-shifting statutes. *See, e.g., Friolo v. Frankel*, 373 Md. 501, 504-05 (2003).

(quoting *Plyler v. Evatt*, 902 F.2d 273, 277 (4th Cir. 1990)). Plaintiff must provide documentation necessary to make a lodestar determination, including but not limited to: (1) declarations establishing the hours expended by counsel, broken down for each task; and (2) support for the reasonableness of counsel's hourly rate.  *See Plyler*, 902 F.2d at 277 ("In addition to the attorney's own affidavits, the fee applicant must produce satisfactory specific evidence of the prevailing market rates in the relevant community for the type of work for which he seeks an award." (internal quotation marks omitted)). Moreover, a request for attorney's fees must comport with the requirements and guidance set forth in Local Rule 109 and Appendix B to the Local Rules.

Plaintiff's counsel seeks $4,448.50 in attorney's fees. (ECF No. 11-2, at 2).  Although Plaintiff has not provided evidence other than detailed billing sheets and an affidavit from Mary Craine Lombardo, lead Plaintiff's counsel, additional evidence is not necessary in this case.  The court has previously considered fee petitions in a number of similar cases, including those filed by Ms. Lombardo, and the affidavit and billing records attached here contain sufficient detail. Ms. Lombardo avers that she and her colleague, Mr. Jonathan F. Lieberman were admitted to the bar in late 1999 and have been practicing law for over fifteen years.  (ECF No. 11-2, at 2).

12

The guidelines set forth in the Local Rules suggest that an hourly rate of $275-$425 is reasonable for lawyers admitted to the bar for fifteen to nineteen years.  Local Rules App'x B. Ms. Lombardo and Mr. Lieberman request a billing rate of between $395 and $420 per hour, which is near the top of the guidelines range.  Earlier this year, the court awarded Ms. Lombardo and Mr. Lieberman an hourly rate of $350 per hour for work performed in an FLSA case.  *Albanez v. Breeding Constr., Inc.*, No. DKC 14-1813, 2016 WL 894617, at *4 (D.Md. Mar. 9, 2016).  This case presents no particularly complicated issues that warrant such a sharply increased rate over the course of three months. Accordingly, a rate of $350 is reasonable for Ms. Lombardo and Mr. Lieberman.

Plaintiff also requests a $275 hourly rate for the work of associate Eduardo Garcia, who has one year of experience.  The Local Rules suggest an hourly rate of $150-$225 for lawyers admitted to the bar for less than five years.  Given that Mr. Garcia's requested hourly rate is well beyond the guidelines set forth by the Local Rules, his hourly rate will be reduced to $200.  The requested $160 for work performed by paralegal Natalia Prado is also outside the guidelines' range and will be reduced to $150.  The requested rates of $150 for work performed by paralegal Lauren Carpenter and $120 for work performed by a

legal assistant are within the guidelines' ranges and are reasonable.

The number of hours expended is well-documented with specificity. (ECF No. 11-2, at 8-11). Counsel spent 16.4 hours on this case, from the initial consultation with the client through the work on the pending motion. The requested hours are reasonable, and paralegals performed much of the work rather than the higher-billing attorneys. Accordingly, $3,904.00 will be awarded for 16.4 hours of work performed by Plaintiff's counsel.

Plaintiff seeks $532.80 in costs. (ECF No. 11, at 10). These costs include: $400.00 for the filing fee; $100.00 for the private process server's fee; $1.50 for copy charges; and $31.30 for postal charges.

> [T]he Fourth Circuit has held that district courts have discretion to determine the costs that will be assessed against losing defendants in FLSA cases. *Roy v. Cnty. Of Lexington, S.C.*, 141 F.3d 533, 549 (4th Cir. 1988) . . . . [C]osts charged to losing defendants may include "those reasonable out-of-pocket expenses incurred by the attorney which are normally charged to a fee-paying client, in the course of providing legal services." *Spell v. McDaniel*, 852 F.2d 762, 771 (4th Cir. 1988). Types of costs charged to losing defendants include "necessary travel, depositions and transcripts, computer research, postage, court costs, and photocopying." *Almendarez v. J.T.T. Enters. Corp.*, No. JKS-06-68, 2010 WL 3385362, at *7 (D.Md. Aug. 25, 2010).

*Andrade v. Aerotek, Inc.*, 852 F.Supp.2d 637, 644 (D.Md. 2012).

Here, the costs requested by Plaintiff are reasonable, necessary, and are detailed with sufficient specificity. Accordingly, Plaintiff has met his "burden of providing sufficient detail ... to explain and support [her] requests for fees and costs," *see Andrade*, 852 F.Supp.2d at 645 (citing *Spencer v. General Elec. Co.*, 706 F.Supp. 1234, 1244 (E.D.Va. 1989)), and the requested costs will be awarded in full.

## IV. Conclusion

For the foregoing reasons, Plaintiff's motion will be granted in part and denied in part. Judgment will be entered for Plaintiff in the amount of $35,840.00. Plaintiff will also be awarded $3,904.00 for attorney's fees and $532.80 for costs. A separate order will follow.

                                                           /s/
                                        DEBORAH K. CHASANOW
                                        United States District Judge